IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GEOFFREY TODD KRASNER
d/b/a Cash Today Pawn,

Petitioner,

v. No. 12-1124

KEVIN BOYDSTON, DIO, BATF,

Respondent.

---

ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

---

*INTRODUCTION*

The *pro se* Petitioner, Geoffrey Todd Krasner, brought this action on May 29, 2012 in the name of Cash Today Pawn ("CTP") against the Respondent, Kevin Boydston, Director of Industry Operations ("DIO"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), seeking reversal of the revocation of his federal firearms license. On July 30, 2012, the Respondent moved for dismissal of this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. (D.E. 11.)

The basis for Respondent's motion to dismiss was that CTP is not a legal entity with the capacity to bring suit. Subsequent to the filing of the instant motion, Krasner sought and was granted leave to amend his complaint in order to change the name of the Petitioner to "Geoffrey Todd Krasner d/b/a Cash Today Pawn." (D.E. 15.) As it appears the Respondent's motion to dismiss is now moot, the Court will focus on the motion for summary judgment.

*STANDARD OF REVIEW*

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Pucci v. Nineteenth Dist. Ct., 628 F.3d 752, 759-60 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)) (internal quotation marks omitted). A petitioner's "status as a *pro se* litigant does not alter his duty on a summary judgment motion." Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 485 (6th Cir. 2010).

*FACTS*

Prior to setting out the undisputed facts presented in this case, the Court deems it necessary to address the parties' compliance with the Local Rules of this district concerning motions for summary judgment. The Rules require that such motions

> be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record.

LR 56.1(a). As for the duty of the non-movant, the Local Rules provide:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) agreeing that the fact is undisputed;
>
> (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3) demonstrating that the fact is disputed.
>
> Each disputed fact must be supported by specific citation to the record. Such

> response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. . . .

LR 56.1(b). In his response to a Rule 56 motion, the non-movant may also set forth a concise statement of additional facts he considers material and which he contends indicate the existence of a genuine issue for trial. Id. "Each such [additional] disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." Id. If the moving party files a reply, it must "respond to these additional facts by filing a reply statement in the same manner and form" as specified in subsection (b) of the Local Rule. LR 56.1(c). Failure to respond to the movant's statement of facts or to the non-moving party's statement of additional facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d).

While the Respondent set forth its statement of undisputed facts in accordance with LR 56.1, the Petitioner utterly failed to respond pursuant to the Local Rule. Moreover, even if the numbered paragraphs under the heading "Factual Background" in Krasner's response could be construed as a statement of additional facts, they were not in proper form as they contained no specific citations to the record. Thus, the Court will consider the Respondent's statement of material facts to be undisputed for purposes of the instant motion for summary judgment. *See* LR 56.1(d); Dodd v. Chrysler Group LLC, No. 1:11-cv-01073-JDB-egb, 2012 WL 1565640, at *2 n.2-4 (W.D. Tenn. May 1, 2012) (non-movant's failure to comply with Local Rule's requirement regarding response to moving party's statement of facts resulted in those facts being deemed admitted for summary judgment purposes).

The relevant undisputed facts are as follows. Krasner first became a federal firearms license holder in 1991. (D.E. 22-1 ¶ 1.) He purchased and became the sole proprietor of CTP, a retail pawnshop, in 1998. (Id. ¶ 3.) CTP deals primarily in guns, although other items are also offered for sale. (D.E.1 ¶ 4.) At the time the incidents relevant to this action occurred, Petitioner held Federal Firearms License number 1-62-113-02-1C-38799, which permitted him to engage in business as a dealer in firearms other than destructive devices at CPT, located at 200 Chester Street in Jackson, Tennessee. (D.E. 10, Gov't Ex. 6.)

As a firearms licensee, he was required by the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. Ch. 44, to comply with various recordkeeping requirements and to submit to regular compliance inspections. *See* Garner v. Lambert, 345 F. App'x 66, 67 (6th Cir. 2009) (citing 18 U.S.C. 923). "The ATF is the agency responsible for enforcement of the GCA." Lumber Jack Bldg. Ctrs. v. Alexander, 536 F. Supp. 2d 804, 805 (E.D. Mich. 2008). Krasner was subjected to ATF inspections in 1999, 2001, 2007, 2008 and 2010 and was cited in three of those years for various recordkeeping errors. (Id., Hr'g Officer's Report to Director at 13-14.)

Since approximately 2001, Krasner had a contentious relationship with ATF stemming from an unrelated incident involving the agency's seizure of a personal firearm possessed by the Petitioner. (D.E. 22 at 4-10.) He sued the ATF over the gun and, after the case was dismissed, Krasner appealed the matter to the United States Supreme Court. (D.E. 22-1 ¶ 53.) Based on this history, he was convinced that ATF was intent on harassing and/or entrapping him. (D.E. 22 at 4-10.)

On August 8, 2011, two weeks prior to a Supreme Court filing deadline, ATF initiated a compliance inspection of CTP. (D.E. 10, Gov't Ex. 1; D.E. 22-1 ¶ 54.) The Petitioner advised ATF

officers that they would not be permitted access to the store and that any items they wished to inspect, including records and inventory, would be brought to the front display counter. (D.E. 10, Official Tr. at 18-19.) According to Senior ATF Industry Operations Investigator ("IOI") Malcolm Lockridge, Krasner "made it clear" to the officers that access to other areas in the store was prohibited. (Id., Official Tr. at 20.)

In a document dated February 21, 2011 and filed with the ATF, Krasner had indicated that his business hours were from 9:00 a.m. to 5:30 p.m. Monday through Friday and from 9:00 a.m. through 2:00 p.m. on Saturday. (Id., Gov't Ex. 6 at 1.) These hours were also posted on the exterior of the premises. (Id., Gov't Ex. 8.) Therefore, when ATF officers left the store on August 8, 2011, Lockridge advised Krasner and his employee, Karen Caldwell, that the inspection would resume at 9:00 a.m. the next day. (Id., Official Tr. at 25-26.) On the officers' arrival the following morning at the appointed time, there was a sign attached on the front door of the business stating that it was closed and would open at 1:30 p.m. (Id., Gov't Ex. 9.) Agents returned to the premises at approximately 1:45 p.m. (Id., Official Tr. at 191-92.) Lockridge was informed by Caldwell that they would have to leave at 3:00 p.m. because she had somewhere to go and Krasner was too busy to assist them. (Id., Official Tr. at 192.) The officer told her that, because the Petitioner was the individual listed on the firearms license, he would have to hear the information directly from Krasner. (Id., Official Tr. at 192.) The Petitioner, who was standing nearby and overheard, made a comment about whether Lockridge was deaf. (Id., Official Tr. at 192.) Also during the inspection process on August 9, 2011, the Petitioner directed Lockridge to the back of the store, referring to him as a "hotshot"; then told agents to get out of the store and at one point told Caldwell to call the police to report a disturbance of the peace. (Id., Gov't Ex. 10 at 4.) However, the inspection

continued that day until around 4:30 p.m. (Id., Official Tr. at 31.)

After the reconciliation of the firearms inventory and required records was completed on August 11, 2011, officers concluded there were approximately forty firearms unaccounted for. (Id., Official Tr. at 36-37.) When confronted about the missing items, Krasner responded that the officers had overlooked firearms that were in fact under the counter and in plain view. (Id., Official Tr. at 37-38.) However, Petitioner had restricted Lockridge to the front of the store, rather than providing access to the entire premises, and the agent averred that he could not observe the weapons from his vantage point. (Id., Official Tr. at 37-38.) Krasner then brought out firearms from under the counter and from a back storage room safe. (Id., Official Tr. at 38.) Lockridge again reminded Krasner that ATF needed full access to the entire licensed premises to conduct the inspection. (Id., Official Tr. at 38.) At that point, Petitioner went into an office area and began removing cases containing guns. (Id., Official Tr. at 39.) Lockridge once again advised Petitioner that he required access to all areas of the premises where firearms were located, to which Krasner responded, yelling, "I got guns all over the [expletive] building!" (Id., Official Tr. at 39-40.) When Lockridge indicated he wanted to inspect the office, the Petitioner refused entry, telling them if they were going to "search [him] down" they would need a search warrant. (Id., Official Tr. at 40.) Lockridge explained that a compliance inspection did not require a search warrant, and Krasner demanded to see the relevant regulation. (Id., Official Tr. at 40-41.) The agent showed the Petitioner 27 C.F.R. § 478.23[1] from

[1]Twenty-seven C.F.R.§ 478.23 provides in pertinent part that

> [a]ny ATF officer, without having reasonable cause to believe a violation of the Act has occurred or that evidence of the violation may be found and without demonstrating such cause before a Federal magistrate or obtaining from the magistrate a warrant authorizing entry, may enter during business hours the premises, including places of storage, of any licensed . . . dealer for the purpose of

a copy of the Federal Firearms Regulations Reference Guide 2005, commonly referred to as the "White Book." (Id., Official Tr. at 40-41, Gov't Ex. 10 at 5.) Krasner nonetheless continued to insist that a search warrant was required. (Id., Official Tr. at 41.) Lockridge's supervisor phoned and advised him at that time to terminate the inspection. (Id., Official Tr. at 41.) The officers left the premises in order to obtain an administrative inspection warrant. (Id., Official Tr. at 41, Gov't Ex. 10-11.) As they were leaving the store, Krasner asked them to come back. (Id., Hr'g Officer's Ex. 3.) Other officers then heard Petitioner twice remark, "Malcolm, you're going to make me do something I'm going to regret." (Id., Official Tr. at 41.) During the days on which the inspections were conducted, the air conditioning in the CTP premises was not functioning, even though the outside temperatures hovered near 100 degrees. (Id., Hr'g Officer's Report to Director at 3-4.)

ATF applied for and was granted an administrative inspection warrant by United States Magistrate Judge Edward G. Bryant on August 12, 2011. (Id., Gov't Ex. 10-11.) Officers returned to the store on August 15 through 17, 2011 and completed the compliance inspection pursuant to the warrant. (Id., Gov't Ex. 1.) At the conclusion of the inspection, Lockridge scheduled a closing conference with Krasner at the United States Attorney's office in Jackson, Tennessee for August 17, 2011. (Id., Hr'g Officer Report to Director at 5.) When the Petitioner failed to appear for the conference, Lockridge traveled to his place of business and conducted the conference there. (Id., Hr'g Officer Report to Director at 5.) The agent cited Krasner for several violations and provided him with a copy of a written report thereof, which the two discussed. (Id., Hr'g Officer Report to Director at 5, Licensee Ex. 3.) The Petitioner called the violations "B.S.," tossed the report away

---

> inspecting or examining the records, documents, ammunition and firearms . . .

27 C.F.R. § 478.23(b).

and refused to sign an acknowledgment that he had received it. (Id., Hr'g Officer Report to Director at 5.)

On or about October 25, 2011, the ATF served upon Krasner a Notice of Revocation of License, ATF Form 4500 (5300.4) (the "Initial Notice"). (Id., Gov't Ex. 1.) The Initial Notice enumerated six separate violations, two of which the DIO at that time determined were willfully committed by the Petitioner and upon which his initial decision to revoke the federal firearms license was based. (Id., Gov't Ex. 1.) Of these two allegations, the first involved Krasner's alleged refusal to allow ATF personnel to conduct a compliance inspection during business hours on August 9, 2011 and the second dealt with his denial of access to the office area on August 11, 2011.[2] (Id., Gov't Ex. 1.) The notice advised Krasner that, within fifteen days of his receipt of the notice, he could file a request with the DIO for a hearing on the license revocation. (Id., Gov't Ex. 1.) In a letter dated November 7, 2011, the Petitioner timely requested a hearing. (Id., Gov't Ex. 3.)

An informal hearing was held on January 10, 2012, over which ATF hearing officer Mark Vetter presided. (Id., Hr'g Officer's Report to Director at 2.) Krasner testified that he told the agents on August 8, 2011 he had an appointment the next day which was subject to change. (Id., Final Notice of Denial at 6 n.4.) The time of the appointment was altered and Krasner's attempts to notify Lockridge of the need to close the business, as the store would not open if Krasner was not onsite, were unsuccessful, leading to the posting on the door. (Id., Hr'g Officer's Report to Director at 10, 14.) In attempting to reach the agent, Krasner was only able to connect with the ATF office line, on which he left a message that apparently never reached Lockridge. (Id., Hr'g Officer's Report to Director at 14.)

[2]The remaining four violations were for recordkeeping errors. (*See* D.E. 10, Gov't Ex. 1.)

After the hearing, the DIO issued a Final Notice of Denial of Application or Revocation of Firearms License (Final Notice), ATF Form 5300.12, dated and served on the Petitioner on or about March 27, 2012. (Id., Final Notice of Denial). In the Final Notice of Denial, the DIO found that, under the circumstances, there was insufficient evidence to support a conclusion that Petitioner willfully refused the ATF officers right to entry on August 9, 2011. (Id., Final Notice of Denial at 6.) Accordingly, the allegation numbered one was not sustained. (Id., Final Notice of Denial at 6.) He noted, however, that "the behavior exhibited by [Krasner] and his employees on August 9, 2011, provides evidence of willfulness regarding the refusal to allow the ATF officers the right of entry to the licensed premises for the purpose of a compliance inspection on August 11, 2011, which is the subject to [allegation numbered two]." (Id., Final Notice of Denial at 7.) The allegation numbered two was sustained. (Id., Final Notice of Denial at 14.)

*ANALYSIS OF THE PARTIES' CLAIMS*

Upon revocation of a license, an aggrieved party is entitled to a *de novo* judicial review of the ATF's action. 18 U.S.C. § 923(f)(3); Armalite, Inc. v. Lambert, 544 F.3d 644, 646-47 (6th Cir. 2008), *reh'g denied* (Dec. 15, 2008). Under § 923(f)(3), "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing." 18 U.S.C. § 923(f)(3). "If the court decides that the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." Id.

"Because the government may revoke a license if the licensee willfully violates any provision of the GCA, a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license." Armalite, Inc., 544 F.3d at 647 (internal citation & quotation marks

omitted). "Summary judgment is therefore appropriate if no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision." Id. "To preclude the grant of summary judgment, [the petitioner] must establish that genuine issues of material fact exist as to each of the ATF's charged violations." Id. at 649.

The issue before the Court is whether the Petitioner willfully violated the GCA or its regulations. In defining a willful violation, the Sixth Circuit Court of Appeals has held that "[a] dealer 'willfully' violates the GCA when it intentionally, knowingly or recklessly violates known legal requirements." Id. at 648. "[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis the dealer 'willfully' violated the GCA." Garner v. Lambert, 558 F. Supp. 2d 794, 801 (N.D. Ohio 2008), *aff'd* 345 F. App'x 66 (6th Cir. 2009); *see also* Farmer v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 456 F. Supp. 2d 893, 902 (S.D. Ohio 2006) ("Undisputed knowledge of the [GCA] provisions and a failure to abide by them constitutes willfulness.").

ATF is entitled to enter a business premises, "(including places of storage) . . . for the purpose of inspecting or examining . . . any records or documents required to be kept by such licensed . . . dealer . . . and . . . any firearms or ammunition kept or stored by such licensed . . . dealer . . . at such premises." 18 U.S.C. § 923(g)(1)(A). Although the GCA does not define what constitutes a business premises, the regulations promulgated under the statute provide the following definition: "The property on which the manufacturing or importing of firearms or ammunition or the dealing in firearms is or will be conducted. A private dwelling, no part of which is open to the public, shall not be recognized as coming within the meaning of the term." 27 C.F.R. § 478.11. The regulations also state that a federal firearms license "covers the class of business or the activity

specified in the license at the address specified therein." 27 C.F.R. § 478.50.

The Petitioner submits in his response to the instant motion that he refused to allow the ATF to enter his office because he believed the inspection was in retaliation for his Supreme Court filing. He has offered no authority supporting a conclusion that his suspicion somehow negated the right of the agency to conduct the inspection. Indeed, if anything, this purported reason gives credence to the ATF's assertion that the violation was willful.

Krasner further posits that the office was his "private dwelling" and, therefore, his refusal to permit officers to inspect it was not willful. However, the office was located in the CTP building, on property on which the dealing in firearms was conducted and for which the license was issued, and, according to the evidence presented, opened into the pawnshop. Neither the statute, the regulations, nor any caselaw cited by the Petitioner supports the notion that certain rooms located in a licensee's commercial building may be parsed out as "private dwellings" and, therefore, deemed by him as immune from ATF inspection. With respect to the regulation defining "business premises," the Fourth Circuit Court of Appeals has noted that it

> need not impinge on activities such as gunsmithing or brokering between licensees in a private dwelling. . . . [T]he regulation does not require licensees who work out of private dwellings simply to throw open their homes to the general public or even to observe regular business hours. [ATF] rulings make clear that licensees need only open that portion of their homes in which they do business and only to the clientele that the business is set up to serve. Thus, licensees need not fear that their homes will be transformed into public thoroughfares.

Nat'l Rifle Ass'n v. Brady, 914 F.2d 475, 480 (4th Cir. 1990), *cert. denied*, 499 U.S. 959, 111 S. Ct. 1580, 113 L. Ed. 2d 645 (1991) (internal quotation marks & citation omitted). Krasner has not asserted that the office was his home.

He also insists that his refusal to permit inspection of the office was not a willful violation

of the GCA because it was not a "place of storage" of any firearms other than his personal weapons. The undisputed facts presented by the Respondent reflect, however, that Krasner went into the office area and removed therefrom cartons of firearms, and that the office area contained firearms inventory. (*See* D.E. 11-2 ¶¶ 36, 78.) In addition, Petitioner told Lockridge, in response to the agent's statement that he needed access to the entire premises, that he had guns "all over" the building, thereby suggesting that guns were to be found in the office as well as other parts of the structure. (*See* id. ¶ 38.) In any case, the statute by its terms does not limit inspection to places of storage, but, rather, simply includes such spaces in the areas in which inspection is permitted. *See* 18 U.S.C. § 923(g)(1)(A).

Krasner further avers that willfulness does not exist because he believed a search of his office was unconstitutional absent a warrant. This assertion fails as well. Title 18 U.S.C. § 923(g)(1)(B) provides that the ATF "may inspect or examine the inventory and records of a . . . licensed dealer without . . . reasonable cause or warrant . . . for ensuring compliance with the record keeping requirements" of the statute. This provision has been specifically held constitutional under the Fourth Amendment. United States v. Biswell, 406 U.S. 311, 314-16, 92 S. Ct. 1593, 1595-96, 32 L. Ed. 2d 87 (1972).[3] "Although the Fourth Amendment's prohibition on unreasonable searches and

[3] Biswell was a pawnshop owner and holder of a federal firearms license. Biswell, 406 U.S. at 312, 92 S. Ct. at 1594. Pursuant to the GCA, a United States Treasury agent arrived at his business to conduct a compliance inspection and during the course thereof requested entry into a locked storeroom. Id., 92 S. Ct. at 1594. Biswell asked if he had a warrant and the agent told him he did not and that § 923(g) authorized such an inspection, producing a copy of the statute for his review. Id., 92 S. Ct. at 1594. Biswell permitted the search and was later indicted for possessing unlicensed firearms found in the storeroom. Id. at 312-13, 92 S. Ct. at 1594-95. The United States Supreme Court noted that

> inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage

seizures is generally applicable to commercial premises as well as private homes, the owner of commercial property in a closely regulated industry has a reduced expectation of privacy in those premises." Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) (internal citation omitted). "Firearms . . . dealing being a pervasively regulated industry," courts are to view Fourth Amendment challenges to gun shop inspections "through the prism of limitations on privacy imposed by [the GCA]." Id. (internal citation omitted).

While at the scene, Lockridge showed the Petitioner 27 C.F.R. § 478.23, which clearly stated that ATF agents were entitled to inspect the licensed premises without a warrant, evidence of a violation or reasonable belief that a violation had occurred. *See* note 1, *supra*. Moreover, Krasner signed ATF forms acknowledging that investigators had explained the provisions of the federal firearms regulations to him, answered his questions regarding them, and his responsibility to familiarize himself with "all of the laws and regulations governing [his] licensed firearms business" in 2007, 2008 and 2010. (D.E. 10, Gov't Exs, 16.7-16.8, 17.6-17.7, 18.7-18.8.) He also executed an earlier version of the form in 2001 and 1999, on which he acknowledged that the federal firearms regulations had been explained thoroughly to him and that any questions had been answered. (Id., Gov't Exs. 19.3, 20.) Therefore, Petitioner knew the agents were entitled to inspect the CTP premises without a warrant. He also knew inspections were specifically permissible even absent any

---

> in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. The dealer is not left to wonder about the purposes of the inspector or the limits of his task.

Id. at 316, 92 S. Ct. at 1596 (internal citation omitted).

evidence or reasonable belief that the premises to be inspected contained a GCA violation. Revocation of a federal firearms license has been upheld based on the licensee's failure to cooperate in compliance inspection. *See* Kwan v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. C032626FDB, 2005 WL 1994072, at *2-3 (W.D. Wash. Aug. 17, 2005), *aff'd* 235 F. App'x 476 (9th Cir. 2007).

Such an outcome is appropriate here. Petitioner has neither contended nor produced evidence that he did not know or understand his legal obligations under the GCA. "The gravity of the policy objectives of the [GCA], from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms." Shaffer v. Holder, No. 1:09-0030, 2010 WL 1408829, at *11 (M.D. Tenn. Mar. 30, 2010) (internal quotation marks omitted). The factual evidence, even when taken in the light most favorable to Krasner, would, in this Court's view, compel a reasonable finder of fact to conclude that he intentionally, knowingly or recklessly violated the known legal requirements.

Perhaps because of the bad blood between him and the ATF, or for some other reason, Krasner chose to give Lockridge a hard time by refusing him and his agents access to CTP's office, despite knowledge that his action constituted a violation. His attempts after the fact to justify his decisions, which this Court finds devoid of merit, simply afford him no safe harbor from the consequences of his conduct.

The Court need not address any remaining violations supporting Respondent's revocation of Krasner's license. A petitioner's failure to establish that issues of material fact exist as to *any* violation cited in favor of revocation "compels entry of summary judgment in favor of the

[government]."  Garner, 558 F. Supp. 2d at 802.

*CONCLUSION*

For the reasons articulated herein, and pursuant to its 18 U.S.C. § 923(f)(3) *de novo* review, the Court finds that the administrative decision was authorized by law and supported by the evidence before the Court. Krasner has failed to produce evidence establishing that a genuine issue of material fact exists whether his violation of the GCA in refusing access to the entire licensed premises was willful. Thus, the Court grants Respondent's motion for summary judgment and affirms the ATF's final decision.

IT IS SO ORDERED this 27th day of March 2013.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE